IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

DANA COTTON-SCHRICHTE,    )
                          )
            Plaintiff,    )
                          )
      v.                  )    No. 07-4052-CV-C-MJW
                          )
SHANE PEATE, et al.,      )
                          )
            Defendants.   )

### ORDER DENYING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DEFENSE EXPERT ROY LUBIT, M.D.

### A. Introduction

Plaintiff Dana Cotton-Schrichte filed a pretrial motion in limine (Doc. 268), pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), seeking to exclude the testimony of defense psychiatrist Roy Lubit, M.D. Plaintiff contends Dr. Lubit's testimony should be excluded because it does not meet the standards for admissibility as set forth in Rule 702 of the Federal Rules of Evidence. Specifically, plaintiff alleges:

> Dr. Lubit's testimony should be excluded or seriously limited because (1) Dr. Lubit does not identify or employ a methodology, theory or technique that satisfies the requirements of Daubert, (2) Dr. Lubit carried out his interview of Plaintiff in direct contradiction of standardized methods, (3) Dr. Lubit recites highly and unfairly prejudicial information in his report and will likely attempt to do so at trial, and (4) harm and unfair prejudice will be created by Dr. Lubit's testimony.

(Doc. 369, pp. 2-3).

Defendants disagree and contend that Dr. Lubit's expert report and opinions satisfy the requirements of Rule 702 and Daubert, and Dr. Lubit's opinions are admissible in whole based upon Rules 401 and 403 of the Federal Rules of Evidence. Defendants further contend plaintiff's motion to exclude Dr. Lubit's testimony claiming that certain facts he considered are irrelevant is baseless. Defendants argue that because plaintiff has claimed psychological and emotional harm from the alleged rape, defendants, through Dr. Lubit and other testimony, should be able to present evidence to establish that the harms she attributes to the purported attack were

caused by other factors.  See Doc. 268, Exh. E (Dr. Lubit's Report, Conclusions, pp. 26-30).  In addition, defendants contend plaintiff's motion to exclude Dr. Lubit's testimony claiming that prejudice arising from certain facts he considered lack any probative value is equally baseless.  Defendants ask the Court to deny plaintiff's request for an order in limine barring Dr. Lubit from testifying or otherwise dramatically limiting his testimony.

## B.  Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony in the federal courts, setting the following parameters:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 was amended to its present form in 2000 in response to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579(1993).  Daubert charged trial judges with acting as gatekeepers to exclude unreliable expert testimony, requiring that the district court ensure that all scientific testimony is both reliable and relevant.  Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006).  The Daubert standard is flexible when determining the reliability and relevance of proffered expert testimony.  It is designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).  Among the nonexclusive factors a court may consider in its gate-keeping function are (1) whether the methodology can and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of this methodology; and (4) whether the technique has been generally accepted in the proper scientific community.  Daubert, 509 U.S. at 593-94; Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1082 (8th Cir. 1999).  The Eighth Circuit has further held that in determining reliability factors, the district court must customize its inquiry to fit the facts of each particular case:

> Not every guidepost outlined in Daubert will necessarily apply to expert testimony based on engineering principles and practical experience, . . . the District Court's preliminary

2

assessment of whether the reasoning or methodology underlying the testimony is
scientifically valid and of whether the reasoning or methodology properly can be applied
to the facts at issue is no less important.

Jaurequi, 173 F.3d at 1083.  Further, Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony.  Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001).  The rule clearly is one of admissibility rather than exclusion.  Id.  Case law shows the rejection of expert testimony is the exception rather than the rule.  Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1101 (8th Cir. 2006).  Decisions governing the admission of expert testimony lie within the broad discretion of the trial court.  Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003).  When doubts exist regarding the proferred expert testimony usefulness, the Eighth Circuit has found that the scale should tip in favor of admissibility.  See Clark v. Hendrick, 150 F.3d 912, 915 (8th Cir. 1998).

The Eighth Circuit has recognized that the reliability of expert opinion testimony based on psychiatric or psychological observation and analysis does not readily lend itself to evaluation using the specific Daubert factors.  Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1297-98 (8th Cir. 1997) (questioning fit of the Daubert factors to psychological evidence but finding evidence admissible under Daubert's flexible approach).  See also Blanchard v. Eli Lilly & Co., 207 F. Supp. 2d 308, 316-17 (D. Vt. 2002) (compiling and discussing cases).

### C.  Legal Analysis

On November 18, 2010, the Court heard testimony from plaintiff's expert, Terry Rohen, Ph.D.  Dr. Rohen is a licensed Psychologist in the State of Missouri and a licensed Clinical Psychologist in the State of Illinois.  Dr. Rohen testified that he had interviewed plaintiff, reviewed investigative and psychological records, and administered a battery of psychological tests to plaintiff.  He testified that, in his opinion, plaintiff is suffering from Post Traumatic Stress Disorder as a consequence of being raped by defendant Shane Peate.

Dr. Rohen further testified that he had reviewed the expert report of Dr. Roy Lubit, defendants' expert, and believed that Dr. Lubit's evaluation of plaintiff did not meet the standard for forensic psychological evaluations.  He testified that because Dr. Lubit only interviewed plaintiff, instead of administering objective tests, then there is no way to establish the known or potential error of his evaluation technique.  Dr. Rohen also criticized Dr. Lubit because during his interview of plaintiff, he re-asked her selected critical questions from the MMPI-2 test

3

previously administered by Dr. Rohen. Dr. Lubit then noted multiple discrepancies between the answers previously given by plaintiff during the written tests administered by Dr. Rohen and those given to him during his interview of plaintiff. Dr. Rohen testified that in his opinion, Dr. Lubit's utilization of this procedure was seriously problematic for several reasons. In sum, Dr. Rohen testified that Dr. Lubit's evaluation of plaintiff fell far short of the standards necessary for an accurate, fair, and objective forensic psychological evaluation. However, Dr. Rohen also testified that he could not cite to any literature or authority to support his allegation that Dr. Lubit used unethical or unacceptable methodology when he interviewed plaintiff and subsequently prepared his report.

On December 21, 2010, the Court heard additional testimony from defendant's expert, Roy Lubit, M.D., Ph.D. Dr. Lubit is a licensed medical doctor in the State of New York and is Board Certified in Psychiatry and Neurology, Child Psychiatry, and Forensic Psychiatry. He is certified as a Diplomat by the American Board of Psychiatry and Neurology (1984), the American Board of Child and Adolescent Psychiatry (2003), and the American Board of Forensic Psychiatry (2003). Dr. Lubit obtained his medical degree from New York University School of Medicine, participated in a Psychiatry Residency at Yale University School of Medicine, and completed a Forensic Psychiatry Fellowship at St. Vincent's Hospital. Notably, Dr. Lubit also taught a course at St. Vincent's Hospital at the New York University School of Medicine and has particular expertise in the area of Post Traumatic Stress Syndrome. Dr. Lubit has previously been qualified and has testified as an expert in forensic psychiatry and child psychiatry in both state and federal courts, and his testimony has never been excluded based upon a Daubert challenge.

Dr. Lubit testified that it is rare that a forensic psychiatrist relies primarily on psychological testing when evaluating a patient. Dr. Lubit testified that he, within a reasonable degree of medical certainty as described in his written report, does not believe plaintiff is presently suffering from Post Traumatic Stress Disorder. In reaching his conclusion, Dr. Lubit testified he had utilized the DSM-IV TR criteria and plaintiff did not have at least three of the seven symptoms necessary for a diagnosis of Post Traumatic Stress Disorder.

Dr. Lubit responded to Dr. Rohen's criticisms in detail and testified that he utilized the "gold standard" method for the evaluation of a patient in the field of forensic psychiatry. Dr.

4

Lubit testified that the single most important part of the evaluation process is the interview of the patient and that he had spent at least eight hours interviewing the plaintiff during his evaluation. He testified that he also reviewed a large number of records relating to plaintiff, including prior medical records, psychological records and investigative reports.

Dr. Lubit also testified that he had read Dr. Rohen's affidavit responding to Dr. Lubit's forensic report of plaintiff and believed that Dr. Rohen had misrepresented to the Court what Dr. Lubit had done in his report. Dr. Lubit cited literature in support of his practice of asking critical questions a second time with a patient. He testified plaintiff gave different answers and the conflicting answers contributed to his view that plaintiff does not suffer from Post Traumatic Stress Disorder. Dr. Lubit also testified that Dr. Rohen was simply wrong when he testified that psychological testing is required when conducting a forensic examination of a patient. Dr. Lubit testified that psychiatrists commonly diagnose patients without utilizing psychological tests. Nevertheless, Dr. Lubit testified he did review and consider the test results from the psychological tests provided to him and administered by Dr. Rohen when reaching his opinion.

### D. Conclusion

The Court finds that Dr. Lubit's testimony concerning his forensic examination of plaintiff and his opinion concerning whether plaintiff is suffering from Post Traumatic Stress Disorder will assist the jury in understanding the evidence and reaching a determination of a fact in dispute. Dr. Lubit is clearly qualified to render an opinion and testify concerning plaintiff's mental health. He has extensive training, substantial practical experience, and a superb education. Dr. Lubit's testimony is based upon sufficient facts and data as evidenced by his lengthy interview of plaintiff, review of her medical, investigative and psychological records, and his application of that knowledge to the DSM-IV TR criteria for a diagnosis of Post Traumatic Stress Disorder. The Court further finds that Dr. Lubit's testimony and opinion concerning plaintiff's mental health is a product based upon the application of reliable principles and methods and the proper application of those principles and methods to the facts of this case. The defendants have demonstrated by more than a preponderance of the evidence that Dr. Lubit is qualified to render his opinion and the methodology underlying his conclusions is valid. The Court finds that Dr. Lubit's testimony is both relevant and reliable.

Finally, while the Court believes that Dr. Rohen is also substantially qualified to render his opinion concerning plaintiff's mental health as a licensed forensic psychologist, with respect to the disputed issue of whether Dr. Lubit conducted an appropriate and ethical forensic examination of plaintiff, the Court specifically makes credibility findings in favor of Dr. Lubit. The jury must decide whether it believes Dr. Lubit or Dr. Rohen when deciding whether plaintiff is suffering from Post Traumatic Stress Disorder as a result of the alleged rape by defendant Peate.

Plaintiff's Motion in Limine (<u>Daubert</u> Challenge) (Doc. 268) to exclude the testimony of Dr. Roy Lubit is DENIED.

Dated this 23rd day of December, 2010, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge