IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

DANA COTTON-SCHRICHTE, )
)
            Plaintiff, )
)
    v. ) No. 07-4052-CV-C-MJW
)
SHANE PEATE, et al., )
)
           Defendants. )

**ORDER**

    Before this Court are the motions for summary judgment filed by plaintiff and defendants. All of these motions have been briefed and reviewed by this court.

**Standard for Summary Judgment**

    Rule 56(c) of the Federal Rules of Civil Procedure requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

    Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the

nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

**Background**

Plaintiff Dana Cotton-Schrichte, a female inmate incarcerated at the Chillicothe Correctional Center, a Missouri state prison for women, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. Plaintiff's complaint alleges that defendant Shane Peate, while working as a corrections officer at the Chillicothe Correctional Center[1], raped her at the prison on February 27, 2003. Peate was criminally prosecuted under Missouri State law for having sex with plaintiff, in violation of a Missouri statute which criminalizes sexual contact between guards and inmates regardless of consent. Peate was sentenced to a term in prison for his crime.

Plaintiff alleges that her rights under the Eighth and Fourteenth Amendments have been violated. Specifically, plaintiff alleges that her right to be free from cruel and unusual punishment has been violated, as well as her rights to equal protection and due process under the Fourteenth Amendment. Plaintiff specifically alleges that Peate's actions violated her rights under the Eighth Amendment. Plaintiff alleges the Missouri Department of Corrections (MDOC) and the supervisory personnel of MDOC and Chillicothe Correctional Center violated her Eighth and Fourteenth Amendment rights in failing to take action to protect her from defendant Peate and subjecting her to a prison environment that puts her at risk of harm, in violation of her constitutional rights.

Plaintiff seeks monetary and injunctive relief from the named defendants.

**Motions for Summary Judgment**

*Plaintiff's Motion for Partial Summary Judgment Against Defendant Peate*

Plaintiff's motion for partial summary judgment argues that there is no dispute of material fact that MDOC's policy and Missouri state law prohibited defendant Peate from having

---

[1] Shane Peate was employed as a Missouri state corrections officer from September 9, 2002, through April 25, 2003.

2

sexual intercourse with inmates through his position as a corrections guard, and therefore, Peate, as a matter of law, violated plaintiff's constitutional rights when he had sexual intercourse with her. Plaintiff argues that the issue of whether or not the sexual intercourse was consensual is irrelevant because both MDOC policy and Missouri state law explicitly state plaintiff was incapable of giving her consent.

Defendant Peate argues that while there is no dispute of fact as to MDOC policy and Missouri state law provisions which establish that an inmate is incapable of giving consent to sexual contact with a guard, consent remains relevant to plaintiff's federal claims alleging her constitutional rights have been violated. Therefore, defendant states there remains a dispute of material fact as to whether or not his and plaintiff's sexual intercourse was consensual, thereby precluding summary judgment.

To sustain a claim for cruel and unusual punishment under the Eighth Amendment, a plaintiff must prove (1) defendant's conduct caused plaintiff an objectively serious injury, and (2) defendant acted with deliberate indifference or reckless disregard toward plaintiff's constitutional rights, health or safety. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Freitas v. Ault, 109 F.3d 1335, 1339 (8th Cir. 1997). In Freitas, the Eighth Circuit clarified that the first prong required to support an Eighth Amendment claim requires the "unnecessary and wanton infliction of pain." 109 F.3d at 1338 (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). In applying the Eighth Amendment standard, Freitas specifically held that "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the Eighth Amendment." Id. at 1339.

In the present case, defendant has asserted the defense of consent, thereby raising a dispute of fact as to plaintiff's Eighth Amendment claims. As cited above, if the sexual contact was consensual, plaintiff's constitutional claims against defendant would fail. Plaintiff's argument that Peate's actions were in clear violation of prison policy and state law, and therefore, his actions violated plaintiff's constitutional rights, is without merit. Not every violation of state law or state-mandated policy or procedures is a violation of the Constitution. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). See also Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996). The fact that a state proscribes something, or determines certain actions to be illegal, does not mean that these issues acquire constitutional dimension. Id. While

sexual interactions between a corrections officer and an inmate are unquestionably inappropriate, and violate Missouri criminal law and the policies of MDOC, such actions do not constitute a violation of the Constitution if they are consensual. Therefore, the issue of consent is a material fact that remains in dispute and must be resolved by a jury at trial. Plaintiff's motion for partial summary judgment against defendant Peate is, therefore, denied.[2]

*Motion for Summary Judgment by Defendants Clements, MDOC and Miller*

Plaintiff's only claims against the Missouri Department of Corrections; Tom Clements, the Director of Missouri Adult Institutions; and Jennifer Miller, the Warden at Chillicothe Correctional Center (hereinafter "CCC"), are for injunctive relief. Plaintiff alleges that her Eighth and Fourteenth Amendment rights were violated when she was raped by former CCC employee defendant Peate, and that injunctive relief is necessary against the MDOC, Clements and Miller to prevent her rights from being violated again. Plaintiff asserts that there remains a real threat she could be sexually assaulted again while incarcerated at the CCC because of the continued unsafe conditions at the CCC, including MDOC and CCC policies and procedures which plaintiff alleges do not adequately protect her. Specifically, regarding the policies and procedures of MDOC and CCC, plaintiff alleges that these policies and procedures tolerate and acquiesce to sexual contact and sexual relations, both consensual and nonconsensual, between CCC employees and inmates. Plaintiff alleges that the policies and procedures fail to provide any effective, meaningful or useful reporting system for inmates to report sexual contact and abuses or to have such reports properly investigated. Plaintiff also alleges that when inmates do complain about guards, particularly when complaints are made regarding sexual contact or misconduct of guards toward inmates, the policies and procedures of defendants allow retaliation.

In order to remedy the threat of continued constitutional violations against herself and other female inmates similarly situated, plaintiff seeks the following injunctive relief from

---

[2]At trial, the jury could find the evidence supports that the sexual contact was not consensual and violated plaintiff's constitutional rights under the Eighth Amendment. The Eighth Circuit has specifically held that sexual abuse of an inmate by a corrections officer can never serve a legitimate penological purpose, and in certain circumstances, constitutes the "unnecessary and wanton infliction of pain, forbidden by the Eighth Amendment." Freitas, at 1338 (citations omitted).

defendants MDOC, Clements and Miller: (1) MDOC, Clements and Miller be enjoined from denying plaintiff and other inmates similarly situated their rights under the Eighth and Fourteenth Amendments, specifically as to prevention of sexual assault, rape, physical assault, and any other sexual contact between MDOC employees and inmates, including plaintiff; (2) establishment of an effective MDOC nonretaliatory complaint system; (3) establishment of MDOC policy and procedure mandating immediate separation of the victim from the perpetrator and, in particular, removing the alleged perpetrator from the premises and not placing the inmate in some type of retaliatory administrative segregation; (4) establishment of MDOC policy and procedure allowing any witnesses, inmates, or other persons wishing to provide information to provide such information anonymously; (5) establishment of MDOC policy and procedure to address sexual misconduct by MDOC employees to include immediate suspension and removal from the workplace; (6) establishment of MDOC policy and procedure mandating meaningful, timely and effective intervention and care to be given to inmate who was subject of impermissible sexual misconduct of a MDOC employee, including necessary medical and psychological services; and (7) establishment of MDOC policy and procedure providing effective measures to protect the offending inmate from any form of retaliation.

The standard for issuing a permanent injunction is essentially the same as the issuance of a preliminary injunction, with the exception that the standard of "fair chance of success" on the merits of plaintiff's claim is replaced with actual success on the merits of her claim. Oglala Sioux Tribe v. C&W Enterprises, 542 F.3d 224, 229 (8th Cir. 2008) (citing Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds, 530 F.3d 724, 733 (8th Cir. 2008)). Thus, the standard to be applied in this case consists of four factors: (1) is there sufficient evidence from which a jury could find for plaintiff on the merits of her claims; (2) is there a threat of irreparable harm to plaintiff if an injunction is not issued; (3) does the balance of harm, considering any injury an injunction might inflict on other parties, support issuance of the injunction; and (4) does issuance of a permanent injunction support the interests of the public. Oglala Sioux Tribe at 229. The threshold question is whether plaintiff can succeed on the merits of her claims against defendants MDOC, Miller and Clements.

Here, plaintiff's claims that defendants MDOC, Clements, and Miller violated her rights under the Eighth and Fourteenth Amendments when they failed to protect her from being raped

by defendant Peate. In taking the evidence in the light most favorable to plaintiff, the success of her claims turn on two issues: (1) whether these defendants knew of a substantial risk of harm that Peate posed to plaintiff, and despite such knowledge, with deliberate indifference to plaintiff's health and safety, failed to take action; and (2) whether the policies and procedures of MDOC were deliberately indifferent to the risk of plaintiff being sexually assaulted in that they caused plaintiff to be sexually assaulted by defendant Peate or did not adequately protect her from Peate's sexual assault.[3]

In Farmer v. Brennan, 511 U.S. 825, 828 (1994), the Supreme Court held that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." The standard for deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. " Id. at 837. See also Riley v. Olk-Long, 282 F.3d 592, 595 (8th Cir. 2002). In the context of her claims, plaintiff must show that defendants were deliberately indifferent to the need to protect her from a substantial risk of serious harm from Peate. Farmer at 834. Defendants must have actual intent that plaintiff would be harmed, or knowledge that harm will result, or reckless disregard of a known risk to plaintiff's health and safety. Id.

Here, it is undisputed that sexual assault is serious harm. Thus, if defendants knew plaintiff was at substantial risk of being sexually assaulted by Peate, or disregarded facts showing that plaintiff or other CCC inmates were at substantial risk of being sexually assaulted by Peate, they would be liable under section 1983 for violating plaintiff's constitutional rights.

As far as defendants' knowledge that Peate was a substantial risk, the undisputed evidence shows that defendants had limited information from which they could have allegedly drawn such a conclusion. Peate had only been employed a few months with MDOC (his beginning employment date was September 9, 2002) before he allegedly sexually assaulted

---

[3]Plaintiff's argument that MDOC and MDOC supervisory defendants Clements and Miller directly participated in Peate's sexual assault of plaintiff and corresponding violation of her constitutional rights is a misinterpretation of the law as applied to supervisory liability under section 1983. Clearly, MDOC and the MDOC defendants did not participate in the alleged rape of plaintiff, and the proper standard for liability is deliberate indifference.

plaintiff on February 27, 2003. During these few months, Peate was issued two over-familiarity violations, which were fairly minor in nature. These violations instructed Peate he was not to give candy to inmates or get involved in recreational activities with the inmates. On January 31, 2003, Peate wrote an internal memorandum expressing concern over rumors and allegations that he was having sexual relations with inmates, stating that these rumors were untrue. When Peate wrote this memorandum, there was no evidence that would have made defendants MDOC, Clements, and Miller, or other supervisory staff at CCC, concerned that the rumors cited by Peate were true. There had been no complaints of sexual misconduct of any kind made against Peate by any inmate or CCC staff. A cite by plaintiff to the statement of one CCC guard that Peate seemed to have the run of the prison when Lt. Grant was on duty and that she mentioned to a couple other corrections officers they should keep an eye on Peate, doesn't show that Peate posed a substantial risk of sexual assault to plaintiff or other inmates or that defendants were made aware of any concerns this CCC guard had regarding Peate's behavior.

There is insufficient evidence to show that defendants were deliberately indifferent to facts showing that Peate was a substantial risk of harm to plaintiff or any other inmate, resulting in plaintiff being sexually assaulted by Peate. Cf. Ware v. Jackson County, Missouri, 150 F.3d 873 (8th Cir. 1998) (sufficient evidence of deliberate indifference when inmates and corrections staff reported suspected abuse, investigation resulted in recommendation of termination of the corrections officer, yet officer was retained with no additional safety measures, resulting in sexual assault of an inmate).

Plaintiff's allegations that MDOC/CCC employee policy and procedure were deliberately indifferent to her health and safety because they enabled Peate to sexually assault her and/or were insufficient to protect her are also not supported by the evidence. MDOC policies clearly and explicitly make it clear that offender abuse will not be tolerated, and that sexual contact between staff and inmates is prohibited. These policies and procedures are provided to all staff of MDOC in the form of "A Staff's Guide to Sexual Misconduct § Harassment," and all staff must sign the acknowledgment-of-receipt form. These policies and procedures provide specific restrictions on sexual misconduct or harassment by employees, requirements for CCC staff to report any sexual misconduct by another employee, and measures to be taken if an employee engages in sexual contact with an inmate, including termination of the employee and referral to

7

local law enforcement. In the instant case, the evidence shows that these policies and procedures were followed, resulting in the termination of Peate and referral to local law enforcement for prosecution. Plaintiff's mere speculation that CCC staff knew of Peate's and other staff's sexual contact with inmates, and that the prison policies and procedures did not protect her and other inmates, or that such policies were routinely not applied or followed, is insufficient to create a material dispute of fact in support of her claim of deliberate indifference.

Plaintiff's claim that MDOC's grievance policies and procedures are deliberately indifferent to her health and safety because they do not adequately encourage reporting by inmates of sexual misconduct by guards, do not adequately care for inmates who file such reports, and do not adequately protect inmates from retaliation, is not supported by the evidence. First, a review of MDOC policies and procedures shows that MDOC encourages inmates to report sexual misconduct, and offers numerous options for disclosure, including, (1) telling a staff member at the facility; (2) sending a letter to the Warden; (3) sending a letter to the Inspector General's Office; (4) calling the Crime Tips Hotline; and (5) filing a report with law enforcement. Plaintiff's allegation that these options are insufficient because they do not include submission of anonymous complaints by inmates against guards is without supporting evidence and contrary to the numerous avenues available to an inmate to make a report. All complaints of misconduct reported at MDOC are referred for further investigation. A staff member can be monitored and/or separated until the investigation is complete, depending on the nature of the allegation. Plaintiff's allegation that the level of investigation done on a complaint can be discretionary does not support her claim that MDOC policies and procedures are deliberately indifferent to protecting plaintiff and other inmates from sexual assaults. There is no evidence showing that defendants did not sufficiently investigate plaintiff's report of sexual assault against defendant Peate or any other instance of failure to sufficiently investigate a claim of sexual misconduct. Plaintiff's speculation and theory that defendants are intentionally, or with deliberate indifference, not fully or sufficiently investigating sexual assault or misconduct reports made by inmates on guards are insufficient to support her claims.

As for treatment of inmates who are victims of sexual assault, MDOC policies provide for whatever type of treatment that may be necessary for assessment and/or treatment. Plaintiff was provided necessary care upon her report of sexual assault by Peate, including mental health

care. Again, plaintiff's mere speculation theory of insufficiency of the policies and procedures cannot support a claim that these policies and procedures are inadequate and deliberately indifferent to the care of inmates.

As for allegations of fear of retaliation discouraging plaintiff and other inmates from making complaints of sexual assault against guards, plaintiff has not come forward with sufficient evidence to show that MDOC's clear policy against retaliation is not enforced. Moreover, plaintiff has not come forward with evidence to show that she or other inmates actually suffered retaliation when they made reports of inappropriate conduct or behavior against MDOC staff.

Plaintiff's allegation that prison policies and procedures discouraged her and other inmates from reporting instances of misconduct because they feared being placed in administrative segregation is also contradicted by the evidence. The evidence is undisputed that immediately following plaintiff's report of Peate's assault against her on May 1, 2003, Peate was permanently separated from the inmates and plaintiff was never placed in administrative segregation as a result of the investigation. Moreover, the evidence shows plaintiff at one point intentionally had herself placed in administrative segregation in order to enable her to talk with another inmate who was in administrative segregation. An intentional effort to be placed in administrative segregation does not show that plaintiff or other inmates feared placement in administrative segregation. Plaintiff has failed to come forward with evidence from which a reasonable jury could find that plaintiff and other inmates were afraid to report being sexually assaulted by prison guards because of fear of being placed in administrative segregation.

As specifically set forth above, the undisputed material evidence shows that plaintiff cannot meet the threshold requirement of actual success on the merits of her claims against MDOC, Clements and Miller. Without success on the merits, the additional factors in determining the appropriateness of a permanent injunction she seeks are not relevant, and plaintiff's claim for a permanent injunction based on these claims fails.

However, even if the court were to have found that plaintiff had a possibility of success on the merits of her claims against these defendants, she has come forward with insufficient evidence from which a reasonable jury could find that there is a threat of continued risk of serious harm to plaintiff. The standard for risk of serious harm is that there is a realistic threat of

9

recurrence, a mere possibility that plaintiff will again be sexually assaulted at CCC is not sufficient. Rogers v. Scurr, 676 F2d 1211, 1214 (8th Cir. 1982).

As set forth above, Peate has not worked at CCC or any MDOC institution since April 25, 2003, when he resigned from MDOC while under investigation. Since that time, defendant Peate plead guilty to felony sexual contact with an offender, and is, therefore, ineligible for rehire; spent a year in jail and eventually moved to Australia. Seven years have lapsed since Peate left MDOC. This evidence fails to support plaintiff's claim that Peate continues to pose a threat of irreparable harm to her. The undisputed evidence is that plaintiff has had no contact with Peate, and will not have future contact with him while incarcerated because Peate is no longer an MDOC employee. These facts fail to support plaintiff's claim that she remains threatened with irreparable harm while incarcerated.[4] Moreover, plaintiff has failed to come forward with evidence to support her claims that since Peate's resignation, there remains a threat of sexual assault against her from other guards at the prison. In the seven years since Peate's alleged sexual assault against her, plaintiff has neither been assaulted or sexually assaulted while in prison, nor even made a complaint of such alleged actions.[5] And as set forth above, MDOC and CCC have policies and procedures for inmates to report the occurrence of a threat of assault, sexual assault, or other misconduct by corrections officers; for investigation of such reports; and protection for the inmates who report such inappropriate sexual behavior.

Plaintiff's allegations that the physical conditions at CCC, including lack of security measures, continue to put her at risk of serious harm is also not supported by the evidence. The newly built CCC buildings that opened in 2008, where plaintiff is incarcerated, are substantially

---

[4]The allegation that there was one instance that occurred just subsequent to Peate's resignation from CCC, where Peate returned to the prison and allegedly tried to make contact with plaintiff, but no contact was made, does not establish that Peate remains a threat of harm to plaintiff.

[5]Plaintiff's new assertion at summary judgment that she voiced concerns of excessive pat-down searches on one particular day in 2006 to her psychiatric doctor, and allegedly filed an IRR with classification regarding the incident, is insufficient to support that she is at serious risk of harm of being sexually assaulted. One instance of what plaintiff believed to be excessive searches of her person on a particular day does not support that she is at serious risk of harm of being sexually assaulted at CCC.

improved in security as compared to the prior CCC prison buildings where plaintiff alleges she was sexually assaulted by Peate. Specifically, plaintiff alleges she was raped in the old CCC prison education building during a time when Peate was the only guard in the area, thereby making her vulnerable to his assault, and that there were no cameras in the education building of the old CCC prison. The new CCC has more than 400 cameras, which cover all areas within the security perimeter that are generally accessible to offenders. The surveillance system displays live feeds and records images that are retained for a period of time for review, if necessary. Except for the housing units, most all areas that are generally accessible to offenders are within the Central Services Building at the new CCC, which include recreation, education, dining, vocational and canteen areas. This Central Services Building has a camera in every hallway and classroom. Additionally, more than 200 additional staff work at the new CCC prison, thereby increasing the presence of officers throughout every area of the prison on all shifts. There is a minimum of a sergeant and three corrections officers assigned to each housing unit during day shifts, and at least three custody officers assigned in the evenings and overnight shifts. The evidence clearly shows that these security updates substantially decrease any risk that plaintiff could be assaulted or sexually assaulted by a guard.

Plaintiff's allegations that complaints of inappropriate staff-inmate contact/relationships continue to be filed even at the new CCC facility are insufficient in and of themselves to support a finding by a reasonable jury that the conditions of CCC are and will continue to pose a substantial risk that plaintiff will be sexually assaulted.

Even with the benefit of all reasonable inferences, the undisputed evidence shows that plaintiff is not at serious risk of harm of being sexually assaulted by prison staff while she is incarcerated at CCC. There is no dispute of material fact, and no reasonable jury could find that the evidence supports anything beyond a mere possibility that plaintiff could be the victim of a sexual assault in the future while incarcerated at CCC. Such mere possibility cannot support plaintiff's claims seeking a permanent injunction.

There is no basis for this court to consider the remaining factors in determining issuance of a permanent injunction. Plaintiff is not entitled to submit injunctive claims to the jury when there is no dispute of material fact, and the evidence is insufficient for a reasonable jury to find that MDOC, Clements and Miller violated her constitutional rights or that there remains a

substantial threat of her being sexually assaulted by prison staff that could support the issuance of the permanent injunction requested by plaintiff.[6] Plaintiff is, therefore, entitled to judgment as a matter of law on plaintiff's claims against MDOC, Clements and Miller.

*III. Defendant Grant's Motion for Summary Judgment*

On December 21, 2010, an oral motion was made by plaintiff for voluntary dismissal of her claims against Lt. Grant. Defendant Grant consented to the dismissal. The parties agreed Lt. Grant would not seek reimbursement of costs from plaintiff.

IT IS, THEREFORE, ORDERED that plaintiff's claims against defendant Lt. Grant are dismissed, with prejudice. It is further

ORDERED that Lt. Grant's motion for summary judgment is moot. [266] It is further

ORDERED that plaintiff's motion for partial summary judgment against defendant Peate is denied. [267] It is further

ORDERED that the motion of defendants MDOC, Clements and Miller for summary judgment is granted and plaintiff's claims against these defendants are dismissed. [271]

---

[6]Federal courts are discouraged from micro-managing state prison institutional rules and procedures. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practice that, in their judgment, are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). See also Turner v. Safley, 482 U.S. 78 (1987); North Carolina Prisoners Labor Union, 433 U.S. 119 (1977); Procunier v. Martinez, 416 U.S. 396 (1974); Pell v. Procunier, 417 U.S. 817 (1974), cited in Bell v. Wolfish; Campbell v. Grammar, 889 F.2d 797 (8th Cir. 1989). The Court in Turner reemphasized these concerns when it stated:

> '[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' As the Martinez Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

Turner, 482 U.S. at 84-85 (citations omitted) (quoting Procunier v. Martinez). Thus, the court should defer to prison officials unless a "prison regulation or practice offends a fundamental constitutional guarantee." Id.

Dated this 23rd day of December, 2010, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge